UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ROLANDO DIAZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2:23-cv-00584-JMS-MG |
| | ) | |
| FRANK VANIHEL, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT

Rolando Diaz has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. [Filing No. 1.] He challenges a prison disciplinary proceeding in which he was found guilty of Offense A-102, battery against offender, and sanctioned with a 90-day loss of good-time credits and the imposition of a one-step demotion in credit earning class, along with other non-custodial sanctions not relevant to this proceeding. [Filing No. 8-6.] For the reasons explained below, the disciplinary proceeding did not violate Mr. Diaz's due process rights and his habeas petition is **DENIED**.

## I.
### LEGAL BACKGROUND

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present

evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II.
## FACTUAL BACKGROUND

On January 31, 2023, Officer Wolke wrote a Conduct Report in which he stated:

> On 01-31-2023 at approximately 06:53AM I, C/O Wolke did witness Incarcerated Individual Diaz, Rolando DOC # 172850 striking his cell mate I.I. Garcia, Miguel DOC #256389 with closed fists. Both offenders were given multiple orders to stop but both refused and force was utilized to stop them. After pulling both offenders out of the cell it was apparent that I.I. Diaz had multiple lacerations on his face and head. I.I. Garcia had visible swelling on his face and head. I.I. Diaz was later taken to the hospital for treatment.

[Filing No. 8-1.] A separate document states:

> On 01-31-2023 at approximately 06:53 AM I, Sgt. A. Adams did witness Incarcerated Individual Diaz, Rolando DOC #172850 striking his cell mate Garcia, Miguel DOC #256389.

[Filing No. 8-2.] Additionally, three photographs of Mr. Diaz are attached to the Conduct Report and show Mr. Diaz with blood on his face and head. [Filing No. 8-3.]

Mr. Diaz was notified of the charge on February 3, 2023, when he received a copy of the Conduct Report and the Screening Report. [Filing No. 8-1; Filing No. 8-4.] He pled not guilty to the offense, requested a lay advocate, and requested as physical evidence "camera – you tell me when it was" and "all evidence pertaining to incident." [Filing No. 8-4.] Mr. Diaz did not request any witnesses. [Filing No. 8-4.]

A hearing was held on February 10, 2023. [Filing No. 8-6.] Mr. Diaz appeared at the hearing, pled not guilty, and provided the following statement: "I was having a seizure and my cell

2

mate was helping me." [Filing No. 8-6.] The disciplinary hearing officer ("DHO") considered staff reports, Mr. Diaz's statement, evidence from witnesses, and physical evidence including "3 pictures of II Diaz with injuries 2 pictures of II Garcia with injuries." [Filing No. 8-6 at 1.] The DHO noted that the incident was not viewable on video. [Filing No. 8-6 at 1.] The DHO concluded that Mr. Diaz was guilty of Offense A-102, Battery, writing:

> DHO believes [Conduct Report] to be true and accurate. DHO took into account [Conduct Report], offender statement, witness statement, [and] 5 picture[s].

[Filing No. 8-6.] Mr. Diaz was sanctioned with a 90-day loss of good-time credits and the imposition of a one-step demotion in credit earning class, along with other non-custodial sanctions not relevant to this proceeding. [Filing No. 8-6.]

Mr. Diaz appealed to the Facility Head and his appeal was denied, but he did not appeal to the Indiana Department of Correction ("IDOC") final reviewing authority. [Filing No. 8-7; Filing No. 8-8.] He then brought this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Filing No. 1.]

## III.
### ANALYSIS

Mr. Diaz raises five grounds in his Petition: (1) that he was denied certain evidence, including camera footage of the incident; (2) that the evidence was insufficient to support a finding of guilt; (3) that he was denied a lay advocate; (4) that he did not receive responses to his administrative appeals and that certain disciplinary papers were stolen; and (5) that he was charged out of retaliation. [Filing No. 1 at 3-4.] The Respondent argues that Mr. Diaz failed to exhaust his administrative remedies as to his claims. [Filing No. 8 at 6-9.] The Court first addresses the exhaustion issue before turning to Mr. Diaz's claims.

3

### A. Failure to Exhaust

The Respondent contends that Mr. Diaz filed his first-level appeal to the facility on February 11, 2023, which was denied on March 2, 2023, but then he never submitted a second-level appeal to the final reviewing authority. [Filing No. 8 at 7.] He acknowledges that Mr. Diaz claims that he filed a second-level appeal "downstate," which the Respondent understands to mean the final reviewing authority, but asserts that Mr. Diaz does not provide any proof that he did so. [Filing No. 8 at 7-8.] The Respondent also argues that Mr. Diaz only raised his sufficiency of the evidence argument in his first appeal, so has failed to exhaust as to his other arguments in any event. [Filing No. 8 at 8.] He notes that Mr. Diaz claims he did not receive all of the forms he requested, but argues that "it is unclear how that would have prevented him from raising his other claims." [Filing No. 8 at 8.]

Mr. Diaz did not file a reply but, as the Respondent notes, asserts in his Petition that "I didn't receive my C.A.B. appeals from the Dept. head of C.A.B. or from downstate either, after the proper time limits and proper channels and procedures." [Filing No. 1 at 3.]

It is well established that state prisoners must exhaust their available state remedies before challenging a prison disciplinary conviction in federal court. *See Love v. Vanihel*, 73 F.4th 439, 446 (7th Cir. 2023) (citing 28 U.S.C. § 2254(b)(1)(A), (C)). To properly exhaust a claim and "avoid procedural default, a habeas petitioner must 'fairly present' a claim to each level of the state courts." *Love*, 73 F.4th at 446. Indiana "has no judicial procedure for reviewing prison disciplinary hearings, so the exhaustion requirement in 28 U.S.C. § 2254(b) is satisfied by pursuing all administrative remedies, and presenting legal contentions to each administrative level." *Id.* (quotations and citations omitted).

4

A petitioner seeking review of defaulted claims has two options. He can show "cause and prejudice for the default" or he can demonstrate that failure to consider the defaulted claims will result in a "miscarriage of justice." *Id.* "The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded compliance with the procedural rule." *Id.* (quotation and citation omitted). "This normally means petitioner must show that the factual or legal basis for a claim was not reasonably available, or that some interference by officials made compliance impracticable." *Id.* (quotations, citations, and alteration omitted).

To show prejudice, "the prisoner must show not merely a substantial federal claim, such that the errors at trial created a possibility of prejudice, but rather that the constitutional violation worked to his actual and substantial disadvantage." *Id.* at 448 (quotation and citation omitted). To demonstrate a fundamental miscarriage of justice, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" such that "it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence." *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016).

Mr. Diaz only raised his argument regarding the sufficiency of the evidence in his first-level appeal. [Filing No. 8-7.] He did not raise issues in his appeal regarding that he was denied certain evidence, including camera footage of the incident; that he was denied a lay advocate; that he did not receive responses to his administrative appeals and that certain disciplinary documents were stolen; and that he was charged out of retaliation. [*See* Filing No. 8-7.] Accordingly, Mr. Diaz has procedurally defaulted those arguments. *Love*, 73 F.4th at 446. Additionally, as to his sufficiency of the evidence argument, Mr. Diaz has not shown cause or prejudice excusing his

5

failure to file a second-level appeal to the Final Reviewing Authority. His only argument is that he did not "receive [his] C.A.B. appeals from the Dept. head of C.A.B. or from downstate either," but it is unclear how this would have prevented him from filing a second appeal to the Final Reviewing Authority. Mr. Diaz has procedurally defaulted his argument regarding sufficiency of the evidence as well. In the interest of thoroughness, however, the Court discusses all of Mr. Diaz's arguments below.

### B. Denial of Evidence

Mr. Diaz argues in his Petition that he was "never given camera evidence/footage when I requested in my C.A.B. hearing." [Filing No. 1 at 3.]

The Respondent argues that although Mr. Diaz requested camera footage, it was not provided to him because the incident was not viewable. [Filing No. 8 at 10.] He notes that prison officials "cannot create evidence that simply is not there." [Filing No. 8 at 10.]

The "right to due process presumptively entitles inmates to view exculpatory evidence, not only to ensure that the hearing officer considers all relevant evidence, but also to enable the inmate to make use of the evidence and prepare the best defense." *Johnson v. Brown*, 681 F. App'x 494, 496 (7th Cir. 2017) (citing *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003)). However, "[p]rison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts,* 699 F. App'x 574, 576 (7th Cir. 2017). So, when a prison asserts that no video evidence of an incident exists, the petitioner challenging that assertion must provide more than "unsupported speculation" that the video evidence actually exists in order to demonstrate that the prison failed to disclose the evidence. *Wilson-El v. Finnan*, 281 F. App'x 589, 592 (7th Cir. 2008) ("[Petitioner] asserts that an unnamed person later informed him that

6

video evidence was available, but he offers no evidence of the source or reliability of this hearsay. The board was required to disclose material exculpatory evidence to [petitioner], so long as it exists and does not threaten institutional safety. But having the board's affirmation that there was no video, [petitioner's] unsupported speculation that video evidence exists is not enough to demonstrate that the board failed to disclose the evidence.") (citations omitted); *see also Serrano v. Wilson*, 2009 WL 734735, at *1 (N.D. Ind. Mar. 19, 2009) (holding that "because no video of the incident existed, it was not a due process error" to deny the petitioner the evidence and stating, "[i]ndeed, it would have been impossible" for the prison to provide non-existent video evidence).

Mr. Diaz has not provided any evidence that a video of the incident exists, instead merely asserting that he requested the video and it was not provided. Because he has not provided any evidence that the Respondent's representation that there is no video is incorrect, his due process rights were not violated when the facility did not provide him with a video.

Mr. Diaz's argument that he was denied video evidence does not provide a basis for habeas relief.

### C. Sufficiency of the Evidence

Mr. Diaz argues that there is "no physical or camera evidence to prove the assault of any offender Miguel Garcia #256389 in G #404 or that we were fighting by Sgt. A. Adams or Ofc. J. Wolke." [Filing No. 1 at 3.] He states further:

> There was no swelling on offender Miguel Garcia #256389 so compare incident reports, camera footage, conduct reports (handwritten not typed), log books, signals and nurses notes and medical records. I'm tired of the lies of their conduct reports that doesn't match the camera evidence/footage or incident reports.

[Filing No. 1 at 3.]

The Respondent argues that there is some evidence that Mr. Diaz is guilty of Offense A-102, including that Officer Wolke witnessed him striking Mr. Garcia with closed fists, and that Mr. Garcia had swelling on his face and head after Officer Wolke pulled them apart. [Filing No. 8 at 12.] The Respondent notes that Officer Adams also saw Mr. Diaz strike Mr. Garcia and that photographs of Mr. Garcia show him with a swollen eye, blood coming from his nose, and blood all over his back. [Filing No. 8 at 12.] The Respondent asserts that "camera evidence was not needed where Officers Wolke and Adams were eye witnesses to the assault," and where there was photographic evidence of Mr. Garcia's injuries. [Filing No. 8 at 12.] He contends that "[t]he fact that the cameras did not record the incident does not negate the other evidence of [Mr.] Diaz's guilt." [Filing No. 8 at 12-13.]

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.").

Under this standard, "courts 'are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.'" *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quoting *Hill*, 472 U.S. at 454);

8

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) ("It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision."); *Ping v. McBride*, 888 F. Supp. 917, 922 (7th Cir. 1993) (stating that in a prison disciplinary case, it is not the proper function of the court "to reweigh conflicting evidence and to make credibility determinations") (citing *Viens v. Daniels*, 871 F.2d 1328 (7th Cir. 1989)).

Here, the Conduct Report, the written statement from Sgt. Adams, and the photographs of Mr. Garcia constitute sufficient evidence to conclude that Mr. Diaz violated the law. *McPherson*, 188 F.3d at 786 (Conduct Report "alone" can "provide[] 'some evidence' for the . . . decision"). Mr. Diaz was charged with and convicted of committing Offense A-102, which provides that the following is prohibited: "Committing battery against another offender (1) with a weapon; (2) with bodily fluids…; or (3) resulting in serious bodily injury." [Filing No. 8-10 at 1.] "Bodily injury" is defined as "[a]ny impairment of physical condition, including physical pain." [Filing No. 8-9 at 3.]

Officer Wolke wrote in the Conduct Report that he witnessed Mr. Diaz striking Mr. Garcia with closed fists, that both Mr. Diaz and Mr. Garcia were given multiple orders to stop fighting, that force was utilized to stop them, and that after separating them it was apparent that Mr. Garcia had "visible swelling on his face and head." [Filing No. 8-1 at 1.] Sgt. Adams submitted a written statement noting that he witnessed Mr. Diaz strike Mr. Garcia. [Filing No. 8-2 at 1.] Further, photographs of Mr. Garcia – submitted on an ex parte basis – reflect that Mr. Diaz had a swollen eye, and blood coming from his nose and on his back. [Filing No. 10.] The Conduct Report, Sgt. Adams' statement, and the photographs of Mr. Garcia constitute some evidence that Mr. Diaz committed Offense A-102.

Mr. Diaz's arguments to the contrary are unavailing. He argues that there was no swelling on Mr. Garcia, but the photographs reflect otherwise and show that Mr. Garcia's eye was swollen. Mr. Diaz also focuses on the fact that the incident was not captured on video, but there is no requirement that an incident leading to a disciplinary charge must be viewable on video to warrant a finding of guilt and the absence of video does not discredit the accounts of Officer Wolke and Sgt. Adams or the photographs.

In short, some evidence supported the DHO's finding of guilt and Mr. Diaz's arguments to the contrary do not provide a basis for relief.

### D. Denial of a Lay Advocate

Mr. Diaz asserts in his Petition that the DHO "never allowed me to have a lay advocate only another C.O. who wasn't fluent in policies or procedures or rules." [Filing No. 1 at 3.]

The Respondent argues that Mr. Diaz did not have a due process right to a lay advocate because he is not illiterate and the subject matter was not complex. [Filing No. 8 at 13.]

First, Mr. Diaz acknowledges that he was provided a lay advocate but complains regarding that individual's knowledge and experience. Due process does not require that a lay advocate have certain qualifications. Moreover, "due process d[oes] not require that the prisoner be appointed a lay advocate, unless 'an illiterate inmate is involved…or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.'" *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992) (quoting *Wolff*, 418 U.S. at 570); *see Wilson-El v. Finnan*, 263 F. App'x 503, 506 (7th Cir. 2008). Mr. Diaz's filings indicate that he is not illiterate and the subject matter of his disciplinary proceeding is not complex, so he was not entitled to a lay advocate in any event.

Mr. Diaz's argument that he was not denied a lay advocate does not provide a basis for habeas relief.

### E. Lack of Response to Administrative Appeals and Stolen Disciplinary Papers

In his Petition, Mr. Diaz states that he "didn't receive [his] C.A.B. appeals from the Dept. head of C.A.B. or from downstate either, after the proper time limits and proper channels and procedures." [Filing No. 1 at 3.] He also argues that his "original 2" Conduct Reports were stolen and that he only received parts of his Screening Report. [Filing No. 1 at 3.]

The Respondent argues that due process does not entitle Mr. Diaz to any administrative appeals process, "let alone a meaningful one." [Filing No. 8 at 13.] The Respondent asserts that "to the extent that [Mr.] Diaz also argues…that copies of his disciplinary papers were stolen, it is unclear why that would entitle him to habeas relief," and that he "had already been informed of the reason for the disciplinary decision and he had no due process right to an appeal thereafter." [Filing No. 8 at 14.]

There is no due process right to an administrative appeal, and thus any errors during the administrative appeal process cannot form the basis for habeas relief. The Supreme Court in *Wolff* made clear that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." 418 U.S. at 556. The due process rights that apply, which are set forth in detail in *Wolff*, do not include any safeguards during an administrative appeal, nor even a right to appeal at all. And the procedural guarantees set forth in *Wolff* may not be expanded by the lower courts. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001).

Because Mr. Diaz did not have a due process right to an administrative appeal, any issue with not receiving a response to his appeal is of no consequence. Additionally, even if copies of Mr. Diaz's disciplinary papers were stolen, the Screening Report indicates that he received notice of the charge against him and requested "all evidence pertaining to incident," including video evidence. [Filing No. 8-4.] And because he was not entitled to an appeal in any event, not having the disciplinary papers for an appeal is not a due process violation. Further, the Court has not denied Mr. Diaz's Petition based on a failure to exhaust his administrative appeals, so his arguments relating to his appeals are irrelevant.

Mr. Diaz's arguments that he did not receive a response to his administrative appeal and that certain disciplinary papers were stolen are not grounds for habeas relief.

**F. Retaliation**

Finally, Mr. Diaz appears to argue that he was charged out of retaliation, stating that "[i]t's so easy for these people to retaliate, threaten or intimidate and racially discriminate." [Filing No. 1 at 3.]

The Respondent asserts that "[w]hile prisoners have a right to be free from arbitrary actions of prison officials, the protections against arbitrary disciplinary actions grounded in retaliation or fraudulent charges are the procedural due process requirements of *Wolff*," and that Mr. Diaz was not denied *Wolff* due process protections. [Filing No. 8 at 14-15.] The Respondent notes that Mr. Diaz had constitutionally sufficient notice of the charge, was provided an impartial decisionmaker, and was provided with a constitutionally adequate written statement detailing the reasons for the discipline. [Filing No. 8 at 15-16.]

"Prisoners have a right to be free from arbitrary actions by prison officials," including false disciplinary actions based on retaliation. *Burton v. Davis*, 41 F. App'x 841, 845 (7th Cir. 2002). However, "the protection from such actions is found in the procedures mandated by due process." *Id.* Therefore, "retaliatory motive in the filing of a disciplinary charge is not a ground for relief if the subsequent disciplinary proceedings are held in accordance with due process." *Lee v. Berge*, 14 F. App'x 690, 693 (7th Cir. 2001); *see also McPherson*, 188 F.3d at 787 ("[W]e have long held that as long as procedural protections are constitutionally adequate, we will not overturn a disciplinary decision solely because evidence indicates the claim was fraudulent."). If the procedural due process requirements of *Wolff* are satisfied, a reviewing court's role "is limited to determining whether there was sufficient evidence to support the [hearing officer]'s decision." *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987) (citing *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984)).

The Court has already found that the disciplinary proceeding against Mr. Diaz comported with due process. Mr. Diaz's conclusory, one-sentence argument that it is "easy for these people to retaliate, threaten or intimidate and racially discriminate" does not entitle him to habeas relief.

## IV.
### CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Diaz to the relief he seeks. Accordingly, Mr. Diaz's Petition for a Writ of Habeas Corpus, [1], is **DENIED** and the action **DISMISSED**. Judgment consistent with this Order shall now issue.

Date: 1/7/2025

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via U.S. Mail to:**

Rolando Diaz
#172850
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
Carlisle, IN 47838